UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
    Plaintiff,

vs.

DAVID DICKINSON,

    Defendants.
_____/

CASE NO. 00-6261-CR-FERGUSON(s)



## MOTION TO COMPEL DISCOVERY AND FOR PROTECTIVE ORDER

Defendant, David Dickinson , is charged by superceding indictment in two counts related to his alleged possession of pictures, on a computer hard drive, of images that are considered child pornography. The government has not allowed the defense to view the data on the hard drive(s) it contends contains the contraband. At the discovery conference with Detective Love, defense investigator, and defense counsel, only some poor quality paper copy was displayed to counsel. The actual data on the hard drives(s) or diskettes were not provided to the defense. The government has a mirror image copy of each hard drive and diskette seized in this case. Theses copies were put on CD ROM. disk by the government's computer lab experts. However these Cd's have not been provided to the defense.

Likewise it is necessary for the defense to have mirror image copies of all the computer data relevant to this case. Inspection under the supervision of the government will not suffice and would deny the defense of a fair opportunity to explore it's defenses in this case. Additionally, undersigned counsel needs an expert witness to inspect this evidence and to answer specific questions from undersigned counsel and the defendant. This would be privileged work product

1



and could not be constitutionally protected without private inspection by the defense. Moreover the expert witness has his own computer laboratory with his specialized software for data examination and would need to exam the evidence in his lab. This process is time consuming and is sensitive work product for the defendant.

The government was asked to provide these copies but has refused to make the requested copies. Their opinion is that the pictures are contraband and cannot be given to the defense. They have said that defense counsel could go to the BSO computer lab and inspect the CD's, however that offer is inadequate as undersigned counsel is not a computer expert. Undersigned counsel needs his own copies of the CD's to explore defense issues in this case. This Court can issue a protective order regarding the copies of the computer data to ensure that the contraband is not distributed or otherwise improperly possessed. Undersigned counsel would need two mirror image copies of each computer hard drive and diskette seized in this case. One copy would go to Marcus Lawson for data analysis on behalf of the defense and the other copy would go to undersigned counsel for use with the defense investigator and or the defendant in this case.

## ARGUMENT

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure provides:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers. Documents, photograph, tangible objects, buildings or place, or copies of portions thereof, which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed. R. Crim. P. 16(a)(1)(C). The materials sought by this motion fit squarely within this provision because the materials are: (1) "papers, documents, photographs, [and/or] tangible

objects,"(2)within the possession of the government,(3) and material to the preparation of the defense, intended for use by the government in its case-in-chief, and /or obtained from Mr. Dickinson.

The use of the word "shall" in Rule 16(a)(1)(C) commands production of the requested material. As explained by Professor Wright in his treatise on federal practice and procedure: "Discovery of the matter of this kind, which was discretionary prior to 1975, is now a matter of right if the conditions specified in subdivision (C) are satisfies." 2 Charles Alan Wright, Federal Practice and Procedure: Criminal 102 (3d ed. 2000). As Professor Wright recognizes:

Subdivision (C) of the amended rules omits any requirement that the request be reasonable and provides that the matters sought must be provided if any of the three circumstances exist: they are material to the preparation of [the] defense; or are intended for use by the government as evidence in chief at the trial; or were obtained from or belonging to the defendant.

Id. At 106.

Although subsection (d) (1) of Rule 16 allows any party, including the government, to move for relief from its discovery obligation on a case-by-case basis, the government has not sought such relief in this case, Instead, the government has resorted to self help, unilaterally deciding to deprive the defense of the ability to copy key evidence in this case.

The government's purported justification for refusing to comply with its obligation under Rule 16 is that the government would be guilty of distribution of child pornography if it were to provide the defense with copies of the allegedly pornographic materials. This argument ignores the fact that child pornography laws must be read in a manner consistent with our Constitution and with the defendant's procedural rights.

The Supreme Court recognized the importance of taking a common sense, case-by-case

approach to child pornography statutes in <u>New York v. Ferber</u>, 458 U.S. 747 (1982), the very case that held child pornography is not generally protected by the First Amendment:

[T]he Court of Appeals was understandably concerned that some protected expression, ranging from medical textbooks to pictorial in National Geographic, would fall prey to the statute. How often, if ever, it may be necessary to employ children to engage in conduct clearly within the reach of [the New York child pornography statute] in order to produce educational, medical, or artistic works cannot be known with certainty. Yet we seriously doubt, and it has not been suggested, that these arguably impermissible applications of the statute amount to more than a tiny fraction of the materials within the statute's reach. Nor will we assume that the New York courts will widen the possible invalid reach of the statute... Under these circumstances, [the statute] is 'not substantially overbroad and... whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'

<u>Id.</u> At 773-74 (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601-615-16 (1973); <u>see also id.</u> at 775 (O'Conner, J., concurring)(suggesting that clinical pictures in medical textbooks and pictures of children in National Geographic would be protected); <u>id.</u> 778 (Stevens, J., concurring) "it is at least conceivable that a serious work of art, a documentary on behavioral problems or a medical or psychiatric teaching device, might include a scene from one of these films, and, when viewed as a whole in a proper setting, be entitled to constitutional protection").

More specifically, at least one district court has held that child pornography laws must be read to accommodated the criminal justice process. As the court explained in <u>United States v. Lamb</u>, 945 F. Supp. 441 (N.D.N.Y 1996.):

[N]either the court nor a juror is subject to prosecution for possession of contraband if it is being examined at trial, and is a sophistry to suggest that because possession of contraband is illegal, a law enforcement officer may not seize it or an assistant U.S. attorney may not present it as evidence in a prosecution. But these privileges do not arise from any of the protections of expression embodied in the First Amendment. They are rather incidents of the special functions these persons perform in our justice system.

<u>Id.</u> at 448-49. Like the prosecutor and the members of the jury, defense counsel performs a

"special function" in our justice system.

Applying the government's interpretation of the law, the law enforcement officers and government experts in this case would be guilty of child pornography offenses, since they have made 'working copies' of the original hard drives and diskettes, in order to preserve the evidentiary integrity of the originals. For the government to argue that it would be a crime to make a copy for the defense, when it has already made copies for its own use, is disingenuous at best.

The Fifth and Eighth Circuits have both indicated that the government can be subject to discovery sanctions for failing to provide the defense with sufficient access to evidence in child pornography cases. In United States v. Katz, 178 F.3d 368 (5thCir. 1999), the government provided defense with poor quality black and white photographs of alleged child pornography, then sought to introduce higher quality color photographs of the alleged child pornography at trial The district court excluded the color photographs as a discovery sanction, describing "the government's failure to disclose the 'photographs' to the defendant in the identical form it intended to produce them at trial [as] either an attempt to 'sandbag' the defense or highly unprofessional conduct." Id. At 372-72. The Fifth Circuit affirmed, id. at 372, demonstrating that child pornography is subject to the same discovery rules as any other form of evidence.

In United States v. Horn, 187 F.3d 781 (8th Cir. 1999), the Eighth Circuit upheld the district court's decision, pursuant to Rule 16(d)(1), to impose certain limitations on the defendant's access to alleged child pornography. See id. at 792. Notable, even though Horn describes the material as "prima facie contraband," the court still treats the material as subject to Rule 16.

In the present case, Mr. Dickinson will be severely prejudiced if the government is not ordered to provide copies of the allegedly pornographic material to the defense and its expert. The government's proposal-that defense counsel and the defense expert view the materials at the police department under their supervision is inadequate for several reasons.

First, Marcus Lawson, the expert that the defense has requested to be appointed under the CJA act to assist the defense in this case, cannot fulfill responsibilities unless he is given true mirror image copies of the hard drives and the diskettes. See Declarations of Marcus Lawson attached to this motion. Simple looking at copies of individual images is insufficient; the expert needs to be able to answer such questions such as where the images came from, when they were downloaded onto the computer, when and if they were viewed, when and if they were re-sent, and when and if they were altered. Nor is it sufficient to bring the defense expert to a police station, because the expert needs access to the resources and forensics tools in his own laboratory.

Second, the defense must be permitted to conduct his analysis outside the presence of the police or other government agents. It would unfairly compromise the defense if the government were permitted to watch and see which information the defense considers significant.

Third, and most important, defense counsel needs the ability to confer privately with both Mr. Lawson and the defendant himself. Defense counsel will be relying upon Mr. Lawson to explain the meaning of forensic computer evidence, while Mr. Lawson, in turn, will be relying upon defense counsel to guide his search for significant evidence. The communication between defense counsel and an appointed/retained expert are privileged; the government's refusal to permit defense counsel and Mr. Lawson to examine the evidence privately robs the defense of

this privilege.

Any concerns about distribution of the allegedly pornographic material can be addressed through the entry of a protective order, a proposed order is being submitted with this motion.

## CONCLUSION

For the reasons set forth above, defendant David Dickinson respectfully request that the Court order the government to comply with its discovery obligations by producing true mirror image copies of the hard drives and diskettes in this case as well as photographs of the minors described in the Superseding Indictment.

Respectfully Submitted,

David P. Hodge, Esq.
727 NE 3rd Avenue
Suite 100
Ft. Lauderdale, Fl. 33304
(954) 462-6145
Fax (954) 462-4393
Fl Bar # 478008

_____
David P. Hodge, Esq.

# DECLARATION OF MARCUS LAWSON

I, Marcus Lawson, President of Global CompuSearch LLC, being of legal age and competent to do so, hereby make the following declaration:

1. I am the President of Global CompuSearch LLC located in Spokane Washington and have been so employed since August of 2000. Global CompuSearch LLC provides consulting, forensics and training services on legal issues related to computers and the Internet. The consulting work the company provides offers a special emphasis on sex crimes and child sexual abuse/child pornography issues involving the Internet.

2. Prior to the creation of Global CompuSearch I was employed as a Special Agent with the United States Customs Service for twelve years. Previous to my employment with the Customs Service, I was employed as a Special Agent with both the Drug Enforcement Administration and U.S. Secret Service for five years. My education consists of a Bachelor of Science Degree in Administration of Justice from Portland State University and a Juris Doctor from Pepperdine University School of Law. During my employment with the United States Customs Service I investigated and worked as an undercover operative in cases of fraud, narcotics, weapons violations, terrorism and child pornography. For eleven of the twelve years I was a Special Agent with the Customs Service I specialized in the investigation of child pornography and child sexual abuse cases.

3. During my employment with the Customs Service I both received and provided extensive training in the area of child pornography, the sexual abuse of children, and the behavior of pedophiles. I received training from the Customs Service, the United States Department of Justice, and other federal, state and local law enforcement agencies. I received instruction on investigations of child sexual exploitation from the Customs Service as well as training in the use of computers to obtain and distribute child pornography both from the

DECLARATION OF MARCUS LAWSON -- 1

1  Customs Service and SEARCH, The National Consortium for Justice Information and
2  Statistics, Sacramento, California. I personally coordinated the Northwest Child Exploitation
3  Conference on behalf of the Customs Service and served as an instructor in undercover
4  techniques and case studies in the field of child exploitation and child pornography crimes.
5      4. During my period of employment with United States Customs, I both coordinated
6  training seminars and trained at seminars coordinated by others, training federal, state and
7  local law enforcement personnel in Oregon, Washington, Idaho, California, Utah, Montana,
8  Alaska, Indiana and Michigan, assistant United States Attorneys and Assistant Federal Public
9  Defenders, the American Probation and Parole Officers Association, the Naval Investigative
10 Service, the Federal Bureau of Investigation, the United States Postal Inspection Service, the
11 United States Customs Service Cyber Smuggling Center and dozens of social service
12 providers and community service groups. In 1996 I created one of the first investigative
13 manuals in use by law enforcement investigators and prosecutors outlining investigative
14 techniques and strategies on the Internet. I assisted in the creation of the U.S. Customs Cyber
15 Smuggling Center in planning and testimony before congress in 1997. I have also testified
16 before the Oregon State Legislature on issues pertaining to the drafting of child pornography
17 legislation. During my period of employment with the Customs Service I represented U.S.
18 Customs child pornography investigative efforts in numerous print media and television
19 interviews including NBC Nightly News, The Montel Williams Show and BBC Television.
20     5. During my employment with the United States Customs Service I personally
21 coordinated four undercover child pornography sting operations and initiated child
22 pornography and/or child exploitation investigations through out the United States and the
23 world. I coordinated these types of investigations with the Royal Canadian Mounted Police,
24 Scotland Yard, the German Polizei, the Naval Investigative Service, the Army Criminal
25 Intelligence Division, the Federal Bureau of Investigations and scores of state and local
26

DECLARATION OF MARCUS LAWSON — 2

1 police agencies. I personally investigated hundreds of child exploitation (child
2 pornography/abuse) cases and was associated with approximately one hundred child
3 pornography/abuse arrests either directly as a case agent or indirectly as a case consultant. I
4 left employment with the government with a 100% conviction rate in every case prosecuted
5 where I was the assigned case agent. I have been recognized as a state, federal and
6 international expert witness in the following areas: Internet undercover techniques, Internet
7 child exploitation investigations, computer evidence in Internet investigations, pedophiles
8 and pedophile behavior.

9     6. I have been retained by the attorney for Mr. Dennis Peterson, the defendant in the
10 instant case. I have been asked to review certain materials made available to him in discovery
11 and assist in the preparation of the defense of Mr. Peterson, to include a forensics
12 examination of the computer evidence collected by law enforcement.

13     7. The examination and review of computer digital evidence is unlike any other type
14 of evidence examination. It almost always involves the review of enormous amounts of data
15 and often requires the use of multiple forensics tools to do so. Because computer evidence is
16 by its nature digital, and digital evidence is fragile, such evidence requires special forensics
17 software tools for examination as well as the knowledge of how to use them correctly.
18 Hence, computer evidence is virtually always examined in a controlled laboratory
19 environment by trained personal using specialized investigative software.

20     8. In cases involving allegations of criminal misconduct, computer evidence is
21 examined by trained law enforcement examiners, as was done here. It is the job of these
22 police examiners to forensically examine the computer evidence for, and document, evidence
23 of the criminal violation. Rarely (if ever) do police technicians examine the evidence for
24 exculpatory data that would assist the defense. Rather, if such evidence exists, it is deemed
25 the responsibility of the defense team to find and document it.
26

DECLARATION OF MARCUS LAWSON – 3

9. It is vitally important for the defense team to have the same access to the evidence in this case that the prosecution team had and continues to have. As just one example, the time and date stamps on various image and program files are critical to confirming or refuting the allegations in this case. This can only be done by a careful analysis of various files in the computer as matched to alleged dates of criminal violations. This process will take considerable time and cannot be done with any stated time constraints as it is impossible to know the extent of the number and size of files available which may confirm or deny the allegations.

10. As another example, the recovery of both deleted and undeleted e-mails in the defendant's computers may confirm or deny the allegations of Internet posting of offending pictures. The recovery and subsequent reading of these e-mails will likely be a voluminous task but is nevertheless necessary for an adequate defense.

11. A thorough and adequate forensics examination of this or any computer media often requires the use of multiple forensics tools. These tools may be of a software or hardware nature. Some softwares are more useful and thorough in their examination of specific areas of the computer than others. Some forensics softwares are more appropriate in the recovery of text dialog than they are for graphic images and some graphic image softwares are better than others in recovering specific files from specific locations in the computer. In other words, the examination of computer data for evidentiary purposes is a dynamic process requiring multiple tools and substantial time.

12. It is unreasonable to expect myself (or any other competent computer examiner) to bring my entire forensics laboratory to the police proscribed location and then complete a detailed thorough examination of two hard drives and multiple zip and floppy disks under any kind of time constraint that would be financially and practically reasonable. In the course of

DECLARATION OF MARCUS LAWSON – 4

1  the exam I will wish to use multiple forensics softwares or other tools available in my
2  laboratory which would be unavailable in a police controlled exam.
3     13. If I am required to examine the computer evidence at the police laboratory, it will
4  necessarily require my presence in Seattle for multiple days at additional expense. It is also
5  doubtful that I would be truly given the freedom of time and privacy necessary by the police
6  laboratory to accomplish a thorough examination. In my experience examining defendant
7  computer evidence in other cases I have consulted on, I was not given appropriate privacy
8  during the examination to conduct adequate defense investigation. Virtually every exam I
9  have done in police presence is carefully watched and the pursuit of any exculpatory leads
10 noted by the police personal present.
11    14. As noted in the accompanying Curriculum Vitae, I am very familiar with the
12 proper handling of computer evidence of this type. During my employment with the federal
13 government I was entrusted with the handling and evaluation of computer evidence in child
14 pornography/sex abuse cases on dozens of occasions. It is not unreasonable to assume that I
15 likely have more experience in the proper handling of evidence in child pornography cases
16 than the other law enforcement personal currently involved in this case.
17    15. Regarding the physical security of the copied evidence, Global CompuSearch
18 LLC specializes in the evaluation of computer evidence for litigation purposes. As such, all
19 computer media is handled in a traditional law enforcement evidentiary manner. Global
20 CompuSearch LLC secures all such media in its digitally secure safe between examinations.
21 A picture of that safe is attached. The digital combination to the Global CompuSearch safe is
22 known only to myself. Evidence is removed from the safe only for evaluation and returned
23 immediately upon any cessation of forensics work. I am willing to allow any drive(s) or other
24 media to be marked by the technician making the forensics copy and such drive(s) can be
25 wiped upon completion of this case and returned to law enforcement for wipe verification.
26

DECLARATION OF MARCUS LAWSON – 5

| | |
|---|---|
| 1  I swear under penalty of perjury that the foregoing is true. | |
| 2 | |
| 3 | |
| 4 | |
| 5  *Marcus Lawson* | _____ Date |
| 6  Marcus Lawson, President<br>Global CompuSearch LLC | |

DECLARATION OF MARCUS LAWSON – 6